[Civ. No. 18204. First Dist., Div. Two. Mar. 16, 1959.]

STOVE MOUNTERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 61, AFL-CIO (an Unincorporated Association), Appellant, v. RHEEM MANUFACTURING COMPANY, Respondent.

Johnson, Thorne, Speed & Bamford for Appellant.

Harry L. Fledderman for Respondent.

KAUFMAN, P. J.—This is an appeal by petitioners from an order of the Superior Court of Alameda County denying an application for the modification or vacation of the severable portion of an arbitration award. Petitioners and appellants herein are members of Stove Mounters' International Union, Local 61. Respondent, Rheem Manufacturing Company, is their employer. The appellant union argues on appeal that the award does not conform to the findings and must be modified and corrected under Code of Civil Procedure, section 1289, or in the alternative, vacated under Code of Civil Procedure, section 1288, subd. (d).

The opinion and award of the arbitrators are the sole guides to the evidentiary facts. The record in the instant case reveals the following:

In 1951, respondent acquired a factory at Newark, Cali-

fornia. Appellant had served as bargaining agent for the employees of the factory under the previous owner, and continued in this capacity after the change in ownership. Later, the parties were covered by a collective bargaining agreement which had become effective June 15, 1955, and was scheduled to remain in effect for two years. Respondent's Newark operation was not satisfactory from an economic standpoint. During the second half of 1956, respondent decided to close down and transfer production elsewhere. Most of the employees were separated from the payroll in November, 1956. Some employees were retained until the end of the year to finish up work in process and take inventory. On December 31, 1956, the Newark premises were sold.

As each employee was separated, he was given a pro-rata vacation allowance for the portion of a year from June 15, 1956 (the beginning of the previous vacation period) until the date of separation. In November 1956, a separated employee filed a grievance pursuant to the collective bargaining agreement, claiming a right to a full year's vacation pay under the agreement. The union contended that those employees who had worked 80 days subsequent to June 15, were entitled to the full allowance of 10 or 15 days' pay (depending on their years of service).

The relevant portion of the collective bargaining agreement relating to vacation pay is as follows:

"All employees with twenty-four (24) months' service shall receive ten (10) days' vacation pay provided they worked eighty (80) working days from June 15, 1955, to June 15, 1956. Vacation and holiday days for the purpose of computing vacation pay, shall be considered as days worked. Employees who quit, and are otherwise eligible, shall be paid on a pro-rata basis of one-sixth (1/6) of eighty (80) hours for each two (2) months of service to date of termination." Another paragraph provided for 15 days vacation for employees with 15 years of service, computed on the same formula.

A second controversy arose, relating to holiday pay. A third issue had already arisen between the parties before the company's decision to terminate operations. These three issues were submitted to arbitration under an agreement dated April 16, 1957. This agreement is in part as follows:

"Pursuant to that Agreement between RHEEM MANUFAC-TURING COMPANY (hereinafter called the 'Company') and the STOVE MOUNTERS INTERNATIONAL UNION OF NORTH AMERICA,

LOCAL No. 61, dated June 15, 1955, it is hereby agreed that the following issues arising out of grievances presented but not adjusted thereunder, are herewith submitted to arbitration:

"ISSUE I. Is the Company required to pay 10 days vacation pay to John J. Silva, who last physically worked for the Company on or about November 9, 1956, at which time said employee had worked 80 working days since June 15, 1956, and had over 24 months service with the Company?

"ISSUE II. Is the Company required to pay holiday pay to John J. Silva for 'Holidays' falling within the 30 calendar day period following November 9, 1956, the last date on which said Silva physically worked for the Company?

"ISSUE III. In order to receive 15 days vacation pay, need the 15 years service required by Article XIII Subsection 3 be continuous?"

The agreement also stated: "The arbitrators shall confine their decision to the issues set forth above and the decision of the majority of the arbitrators shall be final and binding upon the parties hereto."

After hearings held as specified in the agreement, the arbitration board reached its decision and made an award as follows:

"1. The Company is not required to pay 10 days vacation pay to John J. Silva.

"2. The Company is required to pay holiday pay to John J. Silva for the 'holidays' falling within the 30 calendar days following November 9, 1956.

"3. In order to receive 15 days vacation pay, the 15 years service required by Article XII, Subsection 3, need not be continuous."

No appeal is taken as to the awards on Issues II and III. The union-appointed arbitrator dissented on Issue I, as he thought the majority misinterpreted the submission, went beyond the collective bargaining agreement, and failed to distinguish between the legal effect of the destruction of a plant by unavoidable circumstances and voluntary sale by an employer. The opinion of the chairman indicated that were the issue open to him, his award as to Issue I might be different. He stated as follows:

"The wording of the Submission Agreement is important in that it restricts the Board to a yes-or-no answer. It is fundamental that the powers of an arbitration board are created

and limited by the submission agreement; and to make assurance doubly sure, the parties have directed that 'the arbitrators shall confine their decision to the issues set forth above.' The Union contends that Mr. Silva should have received a full 10 days' pay. The Company argues that it was not contractually required to pay him anything, but made a pro-rata allowance until November 9, 1956, for equitable reasons. As it will appear, there is reason to believe that his pro-rata allowance should have been computed to December 31, 1956. But the parties have framed the issue in such a fashion as to preclude a decision in such terms. We must decide whether Mr. Silva was entitled to ten days, or was not entitled to ten days; and nothing more.''

The first argument of the appellant is that the above is an erroneous construction of the submission agreement by the arbitration board; that therefore, this court should construe the submission agreement to imply a power to award vacation pay in a smaller amount than that set forth and thus amend the award to conform to the findings under Code of Civil Procedure, section 1289. This section provides that an award must be corrected or modified:

''(a) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property, referred to in the award.

''(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

''(c) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

''The order must modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.''

Appellant states that the above section is applicable, as the undisputed evidence indicates that all disputes arising out of the enforcement and interpretation of the collective bargaining agreement and the final termination of employment, should be finally settled in the single arbitration proceeding. However, the only portion of the record which supports the latter contention is the affidavit in support of the application for the order vacating the award made by appellant's attorney. Even if there were any merit in this position, as we pointed out above, the opinion and the award of the arbitrator are the sole guides to the evidentiary facts, and this court is not called

on to review the evidence produced. Appellant's own authority points out that a court may not, under well established principles of law, substitute its interpretation of the agreement for that of the arbitrator. (*In re United Automobile Workers,* 15 LA 781 (N.Y. Sup.Ct. 1951).)

Appellant's second argument is that the arbitrators here imperfectly executed their powers as an award of vacation for a lesser period than 10 days, is implicit within the matter specifically submitted under Issue I, and asks in the alternative, that this court vacate the award and order a rehearing pursuant to Code of Civil Procedure, section 1288, subdivision (d). This section provides that an award must be vacated:

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made.

"Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

While as a general rule, in the case of submission of special claims to arbitration, the award must be limited to the particular matter submitted, it may well extend to questions that necessarily arise therefrom. (6 C.J.S., Arbitration and Award, p. 222, § 80(b).) We agree with the appellant that submission agreements are to be construed broadly, but we cannot agree that in the instant case, the question of vacation for a lesser period was implicit or necessarily arose from Issue I as stated in the submission agreement. In the instant case, the terms of the submission agreement are exceedingly narrow and specific. An arbitrator derives his power solely from the agreement. He has no legal right to decide issues not submitted. (*Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App. 2d 156 [260 P.2d 156]; *Flores* v. *Barman,* 130 Cal.App.2d 282 [279 P.2d 81].)

Appellant relies heavily on *Straus* v. *North Hollywood Hospital, Inc.,* 150 Cal.App.2d 306 [309 P.2d 541]. In that case, the issues submitted were considerably broader than in the instant case, and the court held that a provision in the underlying agreement that the arbitrators had the power to terminate the contract were automatically imparted into the submission agreement. Even if we were to agree here that the broader provisions of the collective bargaining agreement

were automatically imparted into the very narrow and specific provisions of the submission agreement, the result desired by the appellant would not necessarily follow. In *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal.2d 45 [315 P.2d 322], our Supreme Court held that even a broadly phrased arbitration provision covering "all disputes or grievances arising over the interpretation or application of this agreement" does not include the arbitration of a breach of the no-strike clause. The court pointed out that the arbitration procedure was designed to cope with the usual employee complaints, not the special one in issue. *Simons* v. *Mills,* 80 Cal. 118 [22 P. 25] and *Sampson Motors, Inc.* v. *Roland,* 121 Cal.App.2d 491 [263 P.2d 445], also relied on by the appellant, do not support its argument. In the former, the submission agreement authorized the arbitrators to decide on the amount of money due each party in a partnership dispute and to settle all differences between the parties. The articles of copartnership were made a part of the submission. The court affirmed an award which allocated accounts receivable between the parties. In the Sampson case, the contract specifically permitted the arbitrators to settle all disputes arising under the contract. In the case of *Arbitration between A. D. Juilliard & Co. and Baitch & Castaldi, Inc.* (1956), 152 N.Y.S.2d 394, it was held that the arbitrators did not exceed their powers in granting to the petitioners damages for nonacceptance of goods of $19,000, when the demand was for the agreed price and cost of showing goods in the amount of $43,000. However, the court stated the rules of the American Arbitration Association pursuant to which the arbitration was held, expressly provided that the arbitrator may grant any relief he deems just within the scope of the agreement. In *Twin Lakes Reservoir & Canal Co.* v. *Platt Rogers, Inc.,* 112 Colo. 155 [147 P.2d 828], the relief given by the award was embraced in the submission agreement.

Returning to the authorities in our state, we cannot agree that cases like *Bierlein* v. *Johnson,* 73 Cal.App.2d 728 [166 P.2d 644], are not persuasive here. In that case, the parties entered into an agreement to set up a company called "Endura Company." One of the several issues submitted to arbitration was, "If Endura Company, Inc., is not organized in accordance with the agreement . . . what are the proportionate interests of plaintiff and defendant in said business?" (P. 731.) The court held that a cash award in full settlement

of one party's interest in the business was not within the matters specifically submitted and not implicit therein. We recently cited this case with approval in *Pacific Fire Rating Bur.* v. *Bookbinders' etc. Union,* 115 Cal.App.2d 111 [251 P.2d 694]. The case of *Drake* v. *Stein,* 116 Cal.App.2d 779 [254 P.2d 613] also supports our view. Even if we were to agree with the appellant that a claim for a lesser amount of vacation was implicit, (which we do not) there would only be an error of judgment not subject to judicial review in the absence of fraud or gross misconduct. (*Sapp* v. *Barenfeld,* 34 Cal.2d 515 [212 P.2d 233].)

We need go no further in deciding this case than the facts of the case require. The submission agreement here, as pointed out in the opinion of the chairman, limits the decision of the arbitrators "to the issues set forth above." The issue as framed is limited to the question: "Is the Company required to pay *10 days* vacation pay. . . ." We need not decide what might have been the extent of the arbitrators' power if the submission agreement had not contained the language: "The arbitrators shall confine their decision to the issues set forth above." With that express limitation in the agreement, we conclude that the appellant has not met his burden of proving error under either Code of Civil Procedure, section 1288, subdivision (d) or Code of Civil Procedure, section 1289. Accordingly, the order denying appellant's motion and in effect confirming the award must be affirmed.

Order affirmed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied April 15, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1959.